UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Charles Anderson, Civil File No. 00-51 (MJD/JGL)

Plaintiff,

v. **ORDER**

Yellow Medicine County,
Richard Blackwelder,
Southwestern Minnesota Mental
Health Center, Inc.,

Defendants.

---

John E. Mack, Mack & Daby, P.A.,
On behalf of Plaintiff.

Roger A. Sudbeck and Lisa Hansen Marso,
Boyce, Murphy, McDowell & Greenfield, L.L.P.;
Bruce P. Candlin, Candlin & Heck,
on behalf of Defendant Southwestern Minnesota Mental Health Center, Inc.

---

This matter is before the Court on Defendant Southwestern Minnesota Mental Health Center Inc.'s motion for summary judgment pursuant to Fed. R. Civ. Proc. 56(c). In the underlying lawsuit, Plaintiff asserts claims of assault, battery, excessive use of force, breach of privacy and defamation. Based on a review of all the files, records, and proceedings herein, the Court GRANTS Defendant's motions.

Background

This action arises out of two incidents. Plaintiff's stepson is Gregory Wasberg, a licensed family therapist employed by Defendant Southwestern Clinic. In February,



FILED 11/8/00
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

1999, Wasberg asked the Yellow Medicine County Sheriff's Department to check on his stepfather, who was in the process of a divorce from Wasberg's mother. Wasberg told the deputies he thought his stepfather was suicidal. Two deputies responded, and left after talking with Plaintiff.

Four months later, on June 14, 1999, Plaintiff telephoned his stepson's employer, Defendant Southwestern Clinic. He spoke with Patricia Hart, a licensed psychologist at Southwestern Clinic, and complained about the manner in which his stepson had contacted the Sheriff's Department. He was particularly upset because the information about his being suicidal was broadcast over the police radios, and the police responded with three squad cars. He complained that the call had destroyed his good standing in the community, which now thinks he is a "suicidal nut." Over the course of the 45 minute call, Hart became increasingly concerned that Anderson was still depressed and suicidal. Hart Aff. ¶ 3; Plaintiff's Mem. Resp., Ex. 3, at 7. Anderson told her he was "going to be fine today, don't you dare call the sheriff's department or anything because it's not that serious." Id. Immediately after the conversation ended, Hart conferred with Wasberg, and they called Defendant Deputy Sheriff Blackwelder, asking him to check on Plaintiff.

When Deputy Blackwelder telephoned Plaintiff and told him he wanted to talk, Plaintiff hung up the telephone. Blackwelder arrived at Plaintiff's house, accompanied by at least two deputies, and encountered Plaintiff in his yard holding a beer can in one hand and an unidentifiable object in the other. The parties agree that Plaintiff was ordered to release what he had in his hands and drop to the ground. When he refused

to comply, Plaintiff was handcuffed and ultimately placed in leg restraints, after kicking Blackwelder. See Tr. State v. Anderson, T9-99-1085, at 15, 61 (Minn. 1999).

The parties disagree about the degree of force used to restrain Anderson. He alleges that the officers tackled him, hand-cuffed him and then kicked him in the back, causing him to fall to the ground. Defendants Yellow Medicine County and Bleckwelder deny that Anderson was kicked, beaten or struck. Plaintiff was arrested, and on September 22, 1999, found guilty of disorderly conduct. On December 17, 1999, he filed a civil complaint in Minnesota District Court, County of Yellow Medicine. Defendants Yellow Medicine County and Blackwelder removed the action to this Court.

Defendant Southwestern Clinic moves for summary judgment, based on a statutory defense of immunity, failure as a matter of law to prove the breach of privacy and defamation claims, and the superseding actions of law enforcement which caused any injury sustained by Plaintiff. Fed. R. Civ. P. 56 (c).

Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). On a motion for summary judgment, the Court must look at the record in the light most favorable to the party opposing the motion, drawing all inferences most favorable to that party. Burnham v. Ianni, 119 F.3d 668, 673 (8th Cir. 1997). The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party. Fed. R. Civ. P. 56(b);

Celotex, 477 U.S. at 323. To defeat summary judgment when a properly supported motion for summary judgment is made, however, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

Analysis

1. Immunity

Minnesota law prohibits liability, causes of action or disciplinary action against practitioners for disclosure of confidences to third parties, in a good-faith effort to warn against or take precautions against a client's violent behavior for which a duty to warn has not otherwise arisen.[1] Minn. Stat. §148.975 et seq. (1988). The provision does not define "client," but elsewhere the statute, which regulates public health occupations, provides:

> "Client" means each individual or legal, religious, academic, organizational, business, governmental, or other entity that receives, received, or should have received, or arranged for another individual or entity to receive services from an individual regulated under sections 148.88 to 148.98. Minn. Stat. §148.89, subd. 2(a).

Plaintiff contends that he did not "receive services" from Southwestern Clinic, and therefore he does not meet the statutory definition of "client." The Court disagrees. Anderson's extended conversation with Patricia Hart was more in the manner of a counseling session than the mere registering of a complaint. The following is but one example taken from the transcript of the 45 minute call:

---

[1] Under Minn. Stat. §148.975, a duty to warn arises when a client or other person has communicated to the licensee a specific, serious threat of physical violence against a specific, clearly identified or identifiable victim.

CA: Well, it really doesn't make any difference what happens to me, because I'm just about at the end of my rope. I'm trying to get through this divorce, but I really don't care about that. But this terrible depression and the suicidal tendency that Greg is causing me–I stay in bed 20 hours a day when I'm not farming. If I do get up, I can't get anything done.

PH: You said you are taking Prozac though, are you continuing to use that?

CA: Yeah.

PH. Good.

CA: But the alcohol negates that.

PH: Yeah, generally alcohol and Prozac don't go well together. Have you talked to your doctor about using alcohol?

CA: Not for 3 months. I can get the Prozac by just going to the drug stores and they call and okay it.

PH: It probably would be a good idea though if you talk to your doctor again. Let him know that you are having trouble with the alcohol and see if he could help you out with that. Because the Prozac certainly isn't going to work like it should if you are drinking with it too.

CA: What do you do? I've got to haul grain to town, I can't haul grain to town unless I've had 3 or 4 drinks. Because of the pressure of going to the elevator and people look at you, and you know what they are thinking.

PH: So the alcohol gives you a little bit of courage to go and do what you need to do.

CA: Yeah.

Pl. Mem. Resp., Ex. B at 6. Although he ostensibly called to complain about his nephew, Anderson talked at length about his depression, drinking problem, and increasing solitude. Hart responded with questions of concern and suggestions, which ended when Anderson began crying and hung up. Hart Aff. ¶ 3. The nature of the

conversation triggered Hart's call to the Sheriff's Office, asking for them to check on Anderson at this home, which they did. The counseling and request for county intervention are all "services" received by Anderson. While he was not a paying customer of the Clinic, Anderson meets the statutory definition of a "client" because he was a "person...that received...services." Minn. Stat. §148.89 subd. 2a.

The evidence also supports a finding of a good faith effort. In this context, "good faith" must be broadly construed to mean an "absence of actual malice." Culberson v. Chapman, 496 N.W.2d 821, 825 (Minn. Ct. App. 1993)(overturning trial court's denial of summary judgment for counselor who asserted immunity from claim regarding unauthorized release of information about death threat made by plaintiff). Plaintiff has not alleged any actual malice on the part of Southwestern Clinic, nor is any evident from the evidence. The Court finds that Southwestern Clinic acted in good faith when it requested the Sheriff's office to visit Plaintiff's farm.

As the Court in Culberson described, the statutory immunity in Minn. Stat. §148.975, subd. 8 (formerly §148.976, subd. 2) is not a mere affirmative defense; it bars any action from arising at its inception. 496 N.W.2d at 825. Minnesota courts have continually applied state immunity statutes to grant summary judgment in matters such as this one. See Culberson, 496 N.W.2d 821; Mjolsness v. Riley, 524 N.W.2d 528 (Minn. Ct. App. 1994)(granting summary judgment based on immunity given to attorney for role in starting commitment proceeding); Rahman v. Mayo Clinic, 578 N.W.2d 802 (Minn. Ct. App. 1998)(affirming summary judgment for clinic claiming immunity under Uniform Anatomical Gift Act).

Southwestern Clinic is therefore immune from suit, under Minnesota state law. In addition, Plaintiff has failed to meet the necessary elements of the invasion of privacy and defamation claims.

2. Breach of Privacy Claim

Minnesota recently recognized the tort of invasion of privacy, dividing it into three causes of action: intrusion upon seclusion, appropriation and publication of private facts. See Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231 (Minn. 1998). Plaintiff bases his claim on the intrusion upon seclusion and publication of private facts causes of action.

a) Intrusion Upon Seclusion

Under the Restatement, intrusion upon seclusion occurs when a party intentionally intrudes into private affairs or solitude in a manner that a reasonable person would find "highly offensive." Restatement (Second) Torts, §652B. See Werner v. Kliewer, M.D., 710 P.2d 1250, 1252-54 (Kan. 1985)(holding that psychiatrist's disclosure to court in letter that plaintiff had suicidal thoughts was not "highly offensive"). As in Werner, the information in this case was made available only to authorities responsible for ensuring safety. The only authorities who visited the farm were seeking to protect Plaintiff's safety. The Court finds that as a matter of law, no reasonable person would think that the manner in which Plaintiff's seclusion was intruded upon was "highly offensive."

b) Publication of Private Facts

The tort of publication of private facts requires publicity of a private matter, when

the manner of publicity is highly offensive, and the information is not of legitimate public concern. See Lake, 582 N.W.2d at 233. Plaintiff has not proven any of these elements.

"Publicity" in this context requires that the information be made available to the public at large, or to so many people that it will become public knowledge, and requires more than disclosure to a small group of individuals. Restatement (Second) Torts §652D, at cmt. a. The only disclosure in this case was made to Deputy Sheriff Blackwelder, who followed Defendant's request that the information not be transmitted over police radios. See Childs v. Williams, 825 S.W.2d 4, 9 (Mo. Ct. App. 1992)(holding that psychiatrist's disclosure of emotional problems to plaintiff's "supervisor and others who had a legitimate and direct interest" was not "publicity"). Plaintiff alleges that the information was "substantially certain to become public knowledge" but has not offered any evidence to sustain the allegation.

As demonstrated above, the Court finds that as a matter of law the matter is not one which would be highly offensive to a reasonable person. See supra. Furthermore, preventing suicides is a legitimate public concern. See Minn. Stat. §609.215 (1963). Plaintiff has therefore failed to prove the required elements of an invasion of privacy claim.

3. Defamation Claim

Under Minnesota law, a statement is defamatory if it (1) harms the plaintiff's reputation; (2) is false; and (3) has been communicated to a third party. See Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

Plaintiff has offered no proof of the falsity Ms. Hart's statements, other than Mr.

Anderson's assertions that she was mistaken in her belief. However, the Court finds that even when the evidence is viewed in the light most favorable to the nonmovants, the evidence provides ample support for Ms. Hart's contention that Mr. Anderson was at risk of committing suicide, and should be approached with caution.

In addition, the alleged defamatory comments, i.e., the comments by Ms. Hart to the Sheriff's Office that Mr. Anderson threatened to "commit 'suicide by cop'" and that he was "suicidal, threatening, and dangerous to himself and/or others," are all privileged. "[A] communication, to be privileged, must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made in good faith, the law does not imply malice... .. actual malice must be proved." Id., 297 N.W.2d at 256-57.

The transcript of the calls, the affidavits and Plaintiff's complaint all demonstrate that Southwestern Clinic possessed probable cause to believe he might commit suicide, and to act to prevent it. Plaintiff contends that actual malice was present, which thus revokes the qualified privilege. He ascribes malicious motives to Mr. Wasberg, his stepson, who he says wished to use the information against him in Mr. Anderson's divorce proceedings against Mr. Wasberg's mother. However, "bare allegations of misconduct without any supporting evidence are insufficient to defeat a motion for summary judgment based on "good faith" immunity." Mjolsness, 524 N.W.2d at 531, citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). Mr. Anderson has presented no evidence of malicious intent, and therefore this Court finds that actual malice has not been proved. The statements are therefore privileged, and the elements of the

defamation charge are not met.

Southwestern Clinic's statutory immunity and Plaintiff's failure to prove the required elements of the charges provide ample basis for the Court's decision. The Court will not, therefore, reach the issue of whether the conduct of the Sheriff's deputies was a superceding cause in the action.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment is GRANTED.

Dated: Nov. 7, 2000.

Michael J. Davis
United States District Court Judge

Anderson v. Yellow Medicine County et al.
Civ. File No. 00-51 (MJD/JGL)